IN THE UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

FAITH TECHNOLOGIES, INC.                                          PLAINTIFF
d/b/a SKC ELECTRIC

VS.                           CASE NO. 06-MC-00006

CHARLES G. ALLEN                                                   DEFENDANT
CONTRACTING, CO., INC.
n/k/a CRABTREE, INC.

### MEMORANDUM OPINION

On this 3rd day of November, 2008, comes before the Court for consideration Defendant, Charles G. Allen Contracting, Company, Inc. n/k/a Crabtree, Inc.'s, Objection to Writ of Execution. (Doc. 12). Plaintiff, Faith Technologies, Inc. d/b/a SKC Electric, has responded.(Doc. 13). The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiff received a judgment against Charles G. Allen Contracting Company, Inc., n/k/a Crabtree, Inc., in the U.S. District Court for the Western District of Missouri, on September 15, 2006 ("Judgment"). Pursuant to this Judgment, Defendant is to pay Plaintiff $100,656.95. (Doc. 1). On November 17, 2006, Plaintiff filed with this Court a Certification of Judgment for Registration in Another District. (Doc. 1). Plaintiff then applied for a Writ of Execution. (Doc. 12), which the Clerk of the Court issued on November 27, 2007 ("Writ"). Defendant filed an Objection to the Writ of Execution on January 15, 2008 ("Objection"). (Doc. 13). Plaintiff then filed a Motion for Hearing, which the Court granted and set hearing for May 5, 2008. However, Defendant did not attend this hearing. Thereafter, Defendant filed a Brief in Support of Garnishee's Response supporting its

Objection to Writ of Execution, (Doc. 17), and Plaintiff responded with a Brief in Opposition to Objection to Writ of Execution. (Doc. 18).

Plaintiff has executed the Writ against ten acres of property in Lafayette County, Arkansas, described in the record in Quitclaim Deed dated October 10, 2002 ("Property"). (Doc. 17-2). The Court recognizes the legal description of the Property contained in the Quitclaim Deed and incorporates it herein. The Property was legally titled to Sammy and Mary Crabtree, as individuals, on the date of the Judgment, September 15, 2006, and has been so titled since July 12, 2002 when Sammy Crabtree purchased it. However, Mr. and Mrs. Crabtree conveyed the Property to their son, Barry Crabtree, by Quitclaim Deed dated January 10, 2007. (Doc. 17-2). On November 27, 2007, when the Clerk of this Court issued the Writ in question, Barry Crabtree held legal title to the Property, as he does at the time of this Order.

Plaintiff argues that Sammy Crabtree, through his actions as sole officer, director and shareholder of Defendant, placed equitable title of the Property in Defendant, and thus Plaintiff should be allowed to execute the Writ on the Property. In addition to this argument, Plaintiff asserts that even if Defendant does not possess equitable title in the Property, that Barry Crabtree is the legal title holder of Property, and he did not object to the Writ, therefore the Court should allow the Writ to be executed. (Doc. 18).

Defendant's position is that it has never possessed title of the Property–equitable or legal– and Sammy and Mary Crabtree have at all times held title to the Property. Defendant then explains that Sammy and Mary Crabtree conveyed the Property to Barry Crabtree on January 10, 2007 as part of estate planning. Defendant claims this fact is irrelevant because the question before the Court is who owned the Property at the time the Judgment was entered.

## II. DISCUSSION

The issue before the Court is whether Plaintiff may execute a writ on property, in satisfaction of a judgment, that is not legally titled in the name of Defendant–judgment debtor. The parties frame the issue in two alternative arguments, and the Court will do the same. The state law of Arkansas applies to the procedure on execution in proceedings supplementary to and in aid of a judgment, unless there is a federal statute that governs. *See* Fed. R. civ. P. 69(a).

### A) Equitable Title

Arkansas recognizes equitable title as the present right to the legal title. *Hendriksen v. Cubage*, 228 Ark. 536, 539, 309 S.W.2d 306, 308-309 (1958). "An equitable estate in its very conception, and as a fact, requires the simultaneous existence of two estates or ownerships in the same subject matter...one legal...the second equitable...the ownership of the equitable estate is regarded by equity as *the real ownership*, and the legal estate is, as has been said, no more than the shadow." *Id*. at 540 (emphasis added). Plaintiff asserts that Defendant possessed equitable title to the Property, and because Arkansas recognizes equitable title as "the real ownership," Plaintiff is entitled to execute the Writ on the Property in an attempt to satisfy the Judgment. While the Court agrees that Arkansas recognizes the doctrine of equitable title and credits it as "the real ownership," the Court has not been offered Arkansas precedence to support Plaintiff's assertion that the facts in the present case warrant a finding of equitable title in Defendant.

Plaintiff cites to the Court, *Ferrif v. City of Hot Springs*, in which the Eighth Circuit, applying Arkansas law, held that the plaintiff had equitable title in property. In *Ferrif*, a property owner who held an undivided one-third interest in land was assigned the remaining two-thirds interest in the land by the second property owner in an oral unrecorded assignment. After this

assignment, the city condemned and razed the homes on the land. The assignment was recorded two years after the city's actions. 82 F.3d 229, 230 (8th Cir. 1996). The *Ferrif* court held that the first property owners were entitled to full compensation by the city (instead of one-third of the compensation) because they held equitable title to the whole property at the time the city condemned and razed the homes on the property. *Id.* at 231. The court based their holding on the facts that there had been an undisputed oral assignment of the two-thirds interest in the property by the second property owners, even though the two-thirds interest was still recorded in the second owners' name, and that the second owners had stopped making payments on the property after the oral assignment. *Id.*

Plaintiff here offers facts showing that Defendant conveyed a right to occupy, rather than a right to legal title in the Property. Defendant rented the Property from Sammy and Mary Crabtree up to the time where Defendant entered into an Asset Purchase Agreement selling its assets, including its right to occupy the Property, to CGACC, Inc. ("Agreement"). Plaintiff bases its assertion that Defendant possess equitable title in Property on the following facts: 1) In the Agreement, "Seller" was defined as being Defendant; 2) Seller/Defendant allowed CGACC, Inc. to occupy the Property for a period of 36 months as part of the Agreement purchase price; 3) Seller/Defendant promised to have good and marketable title to the tangible assets conveyed in the Agreement, that no one other than Seller/Defendant has any interest in or right to the tangible or intangible interest transferred, and the Agreement does not interfere with the rights of any other person; and 4) Sammy Crabtree in his capacity as Defendant's president signed the Agreement. Plaintiff asserts that because Defendant conveyed the "right to occupy" the Property it must posses equitable title to it.

The Court does not agree that the Agreement, nor any other facts offered by Plaintiff,

establish that Defendant held equitable title to Property at the time the Judgment was entered. As stated above, Defendant leased the Property from Sammy and Mary Crabtree and therefore had a right to occupy the Property. The Agreement then conveyed this "right to occupy" to CGACC, Inc. According to Arkansas law, for Defendant to have equitable title they must possess a present right to the legal title of the Property. *Hendriksen,* 228 Ark. at 539. There is no language in the Agreement to support the assertion that Defendant had or thought they had a present right to the legal title of the Property. The fact that "Seller" was defined as Defendant in the Agreement is irrelevant because Defendant did not attempt to convey legal title to the Property. Instead, Defendant conveyed a right to occupy the Property for 36 months–a lease. The language Plaintiff cites in Agreement, Paragraph 3.2 titled "Seller's Authority, taken in context of the entire Agreement, does not state to have good and marketable title in the Property, instead it alleges to have good and marketable title in all tangible and intangible assets listed in paragraphs 2.1(a) and 2.1(b) of the Agreement. While paragraph 2.1(a) specifically mentions the conveyance of the "right to occupy," paragraphs 1.4 and 1.5 of the Agreement defines "Tangible Assets" and "Intangible Assets," and neither make any mention of real property.[1] (Doc. 17-2). In addition, the Court points out in paragraph 4.6 the language giving Buyer/CGACC, Inc. the right to inspect the condition of "the Leased Premises" (Doc. 17-2). Defendant was occupying the Property, and the Agreement does not purport to convey any more than the right to occupy the Property.

Plaintiff offers no facts to show there was an attempted conveyance from Sammy and Mary Crabtree, the legal title holders of the Property, to Defendant that failed to meet met the technical requirements of a real property transfer, as there was in *Ferrif.* Additionally, Plaintiff does not offer

---

[1] In addition, Tangible Assets and Intangible Assets are also defined to include those items on the "Bill of Sale" which by definition is for personal property.

the Court any convincing facts regarding actions by Defendant or the Crabtrees to establish that Defendant believed itself to be the legal title holder of the Property, as was present in *Ferrif*. For these reasons the Court finds *Ferrif* to be distinguishable from the situation at issue.

The Court holds that Defendant did not have equitable title to the Property at the time of Judgment or at any time thereafter. Therefore, the Property is not subject to attachment by Plaintiff in satisfaction of the Judgment, thus rendering the Writ improper.

**B) Barry Crabtree Made No Objection**

Plaintiff asserts, in the alternative, that Defendant's Objection to Writ of Execution on Property should be denied because Barry Crabtree is the record title owner and he has not objected to the Writ. Plaintiff has cited to the Court no authority to support its alternative claim. Moreover, the Court finds it would be unreasonable to expect Barry Crabtree to make an objection when he has received no service or notice of the Writ in compliance with Arkansas law. Ark. Code Ann. § 16-66-104 (2008). Furthermore, because the Court has held that Defendant never held title–legal or equitable–in Property now owned by Barry Crabtree, attachment by Plaintiff to the Property, in an effort to satisfy the Judgment against Defendant, would be improper.

### III. CONCLUSION

For the reasons discussed herein and above, the Court finds that Plaintiff's Writ of Execution is improper and should be and hereby is **QUASHED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 3rd day of November, 2008.

                                                /s/ Harry F. Barnes
                                                Hon. Harry F. Barnes
                                                United States District Judge